(December 5, 1917.)

## STATE, Respondent, v. GEORGE NOLAN and PERCY HEATH, Appellants.

[169 Pac. 295.]

JUSTICE OF PEACE JURISDICTION—OFFICER DE FACTO—INDORSEMENTS ON INFORMATION—LEADING QUESTIONS—ADMISSIBILITY OF EVIDENCE—CONFESSIONS—INSTRUCTIONS—REASONABLE DOUBT.

1.   The justice of the peace who sat as committing magistrate in· this case was appointed as such justice for Buhl precinct No. 2, but on the date of his appointment and on the date of the preliminary hearing he was a resident of Buhl precinct No. 1 and at all times held his court therein.   *Held*, that while it may be true, under sec. 3885, Rev. Codes, that he was not eligible to the office of justice of the peace of the 'precinct for which he was appointed and hence could not be regarded as an officer *de jure,* still under the facts shown by the record he was an officer *de facto,* and as such his jurisdiction and official acts were as valid as to the public and third parties as though he were qualified and eligible in every respect.

2.   Where the trial court permitted the indorsement of the name of a witness on the information the day the case was called for trial, but it does not appear that defendants' counsel requested a continuance or claimed surprise or that defendants were in any way prejudiced, and it further appears that the matter in regard to which such witness testified occurred more than a month after the information was filed, no error was committed.

On propriety of instruction to the effect that a reasonable doubt is one for which a reason can be assigned, see note in 16 L. R. A., N. S., 260.

As to when confession is voluntary, see notes in 18 L. R. A., N. S., 768; 50 L. R. A., N. S., 1077.

3. Permission to counsel for the state in a criminal case to ask leading questions of witnesses, aside from the cases provided for by statute, rests largely in the discretion of the trial court, and does not constitute reversible error in the absence of an abuse of such discretion.

4. *Held,* that the exhibits in this case were sufficiently identified upon the trial to justify their admission.

5. *Held,* that sufficient evidence was introduced in this case to show that the confessions of the defendants were freely and voluntarily made before they were admitted in evidence.

6. The court may properly refuse to instruct the jury that they must acquit the defendant unless some particular isolated fact or circumstance is proven beyond a reasonable doubt, the proper instruction being that such doubt must arise, if at all, from all the facts and circumstances in evidence when considered together.

7. Error cannot be predicated on the refusal of instructions when such instructions are given by the court in a different form but substantially as requested.

· 8. When there is no request on the part of defendants' counsel for an instruction defining circumstantial evidence, an instruction as given by the court cannot be attacked on the ground that it does not include such definition, when the instruction correctly states the law as far as it goes, applicable to the facts in evidence.

9. In instruction No. 11 the court instructed the jury: "No juror from mere pride of opinion hastily formed or expressed should refuse to agree; nor, on the other hand, should he surrender any conscientious views founded on the evidence. The jury should, therefore, lay aside pride of opinion and judgment, examine any differences of opinion there may be among them, in a spirit of fairness and candor, reason together and talk over such differences, and harmonize them, if possible, so that this case may be disposed of." *Held,* that while the giving of such instruction was not justified, it cannot be re- · garded as prejudicial to the defendants or as constituting reversible error, under the circumstances of this case.

10. Instruction on reasonable doubt considered, and *held,* that while said instruction contained unnecessary matter, it was not prejudicial to the defendants and the giving of it did not constitute error.

[As to urging or coercing jury's verdict, see note in 105 **Am. St.** 569.]

APPEAL from the District Court of the Fourth Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

From a conviction for grand larceny defendants appeal. *Affirmed.*

Longley & Walters and Taylor Cummins, for Appellants.

The alleged justice of the peace did not reside in the precinct for which he was appointed and in which the court was held. He was not legally qualified to sit as a committing magistrate in this case, and a preliminary hearing held before him cannot have any legal effect. Sec. 7662, Rev. Codes, providing for preliminary examination, is mandatory. (*State v. Braithwaite,* 3 Ida. 119, 27 Pac. 731.)

A showing should be made by affidavit or otherwise, that the names of additional witnesses were not known to the prosecuting attorney at the time the information was filed. (*State v. Crea,* 10 Ida. 88, 76 Pac. 1013; *State v. Wilmbusse,* 8 Ida. 608, 70 Pac. 849; *State v. Barber,* 13 Ida. 65, 88 Pac. 418; *State v. Allen,* 20 Ida. 263, 117 Pac. 849; *State v. Silva,* 21 Ida. 247, 120 Pac. 835.)

The jury are not to be bound by any statement of the witness purporting to relate an alleged confession, as to whether any promises of immunity or reward were offered, or threat made, as an inducement for making it, but rather, as a basis for the admission of such testimony, the jury are entitled as a matter of right to be put in possession of all the facts and circumstances surrounding such transaction, and it is the proper province of the jury and not of the witness, to say, after hearing such evidence, whether or not in fact such promises were offered or such threats made, and whether or not such purported confession was voluntary or involuntary. (Wigmore on Evidence, secs. 861, 866; *Burton v. State,* 107 Ala. 108, 18 So. 284, 285.)

Instruction No. 11 clearly invaded the domain of the jury, and its undeniable effect was to coerce a verdict. (*State v. Ivanhoe,* 35 Or. 150, 57 Pac. 317; *Randolph v. Lampkin,* 90 Ky. 551, 14 S. W. 538, 539, 10 L. R. A. 87; *Whitelaw's Exr. v. Whitelaw,* 83 Va. 40, 1 S. E. 407; *Cranston v. New York Cent. & H. R. Co.,* 103 N. Y. 614, 9 N. E. 500; *State v. Bybee,* 17 Kan. 462; *State v. Chambers,* 9 Ida. 673, 75 Pac. 274;

*Hodges v. O'Brien,* 113 Wis. 97, 88 N. W. 901; *State v. Fisher,* 23 Mont. 540, 59 Pac. 919; *People v. Kindleberger,* 100 Cal. 367, 34 Pac. 852; *People v. Sheldon,* 156 N. Y. 268, 66 Am. St. 564, 50 N. E. 840, 41 L. R. A. 644.)

Instruction No. 6, wherein the court attempted to define a reasonable doubt, was prejudicial error. (*Bothwell v. State,* 71 Neb. 747, 99 N. W. 669; *Lillie v. State,* 72 Neb. 228, 100 N. W. 316; *Clements v. State,* 80 Neb. 313, 114 N. W. 271; *Lambert v. State,* 91 Neb. 520, 136 N. W. 720; *People v. Johnson,* 140 N. Y. 350, 35 N. E. 604; *Siberry v. State,* 133 Ind. 677, 33 N. E. 681; 12 Cyc. 627; 3 Brickwood's Sackett on Instruction, sec. 4445; *McAllister v. State,* 112 Wis. 496, 88 N. W. 212; *Blue v. State,* 36 Neb. 189, 125 N. W. 136; *Brown v. State,* 88 Neb. 411, 129 N. W. 545; *Bartels v. State,* 91 Neb. 575, 136 N. W. 717.)

John E. Davies, Pros. Atty., J. H. Peterson, Atty. Genl., Edwin Snow and Laurel E. Elam, for Respondent.

If the jurisdiction of the court before whom the preliminary examination was held really extended to the place where the trial was actually held, any irregularity as to the place where the court held the examination would be waived by failure to object at that time. (*State v. Noyes,* 15 Ida. 241, 96 Pac. 435.)

Permission by the trial court to indorse new names on the information is not reversible error unless it clearly appears that by such permission the rights of the defendants have been substantially prejudiced. (*State v. Rooke,* 10 Ida. 388, 400, 79 Pac. 82; *State v. Silva,* 21 Ida. 247, 254, 120 Pac. 835; *State v. Wilmbusse,* 8 Ida. 608, 70 Pac. 849.)

Our statute on this particular question is taken from Nebraska. (*Fager v. State,* 49 Neb. 439, 68 N. W. 611; *Trimble v. State,* 61 Neb. 604, 85 N. W. 844, 845.)

Courts now permit the use of general questions by the prosecutor for the purpose of establishing a *prima facie* admissibility of the confession and then give to the defense the opportunity of cross-examination for the purpose of showing affirmative facts of restraint, promises of immunity, etc.

The court must decide as to the admission of the confession. The jury, after admission of the testimony has been allowed, must then decide all facts in connection therewith. (*Burton v. State,* 107 Ala. 108, 18 So. 284, 285; Wigmore on Evid., p. 993; note in 18 L. R. A., N. S., 768, 777.)

Instruction No. 11 was not prejudicial to defendants. This instruction is never objected to except where it has been given after the jury have already deliberated and failed to reach a conclusion, and even at that time only from the standpoint that it is coercive and invades the province of the jury. (*State v. Hawkins,* 18 Or. 476, 23 Pac. 475, 477.)

Instruction No. 6, on reasonable doubt, was approved in *State v. Moon,* 20 Ida. 202, Ann. Cas. 1913A, 724, 117 Pac. 757. See, also, *Commonwealth v. Harman,* 4 Pa. 269, 273; *Fife v. Commonwealth,* 29 Pa. 429, 439; *Nevling v. Commonwealth,* 98 Pa. 322, 334; *Spies v. People,* 122 Ill. 1, 82, 3 Am. St. 320, 12 N. E. 865, 17 N. E. 898; *People v. Zajicek,* 233 Ill. 198, 84 N. E. 249; *State v. Potts,* 20 Nev. 389, 22 Pac. 754; *Perry v. People,* 38 Colo. 23, 87 Pac. 796; *State v. Tyler,* 122 Iowa, 125, 97 N. W. 983; *State v. Pott,* 166 N. C. 268, Ann. Cas. 1916C, 422, 80 S. E. 1060; *Boulden v. State,* 102 Ala. 78, 15 So. 341; *State v. Pierce,* 65 Iowa, 85, 89, 21 N. W. 195; *Moore v. State,* 4 Okl. Cr. 212, 111 Pac. 822, 823.

Where the instructions taken as a whole clearly present the law to the jury, minor errors in one instruction will not be ground for reversal. (*People v. Oppenheimer,* 156 Cal. 733, 106 Pac. 74; *People v. Kreidler,* 180 Mich. 654, 147 N. W. 559; *Bartley v. State,* 53 Neb. 310, 73 N. W. 744.)

BUDGE, C. J.—The appellants, George Nolan and Percy Heath, were jointly informed against, together with Ralph Cunningham and Harry Hartwell, for the crime of grand larceny, it being alleged therein that the defendants "on or about the 21st day of June, 1914, at the County of Twin Falls, State of Idaho, did then and there wilfully, unlawfully and feloniously take, steal, drive and carry away one black polled Angus heifer of the value of One Hundred Dollars, and of the personal property of Ira Brackett and Chester E. Brackett." An application having been made

for separate trial, the trial court directed that the appellants Nolan and Heath should be tried together. Appellants were convicted of the crime as charged in the information and sentenced to serve a term of imprisonment in the state penitentiary. This appeal is from the judgment.

There is no conflict in the evidence, the appellants having rested at the close of the state's case, relying upon their motion for an advisory verdict to acquit, which was denied. The evidence shows: That the animal alleged to have been stolen belonged to Ira Brackett and Chester E. Brackett; that it had been kept in a pasture with other pure-bred stock of the same breed; that there was plenty of feed in the pasture; that the fence and gates around the pasture were in good condition; that the heifer was seen in the pasture with the rest of the herd, in the afternoon of the 21st day of June, 1914, by Chester E. Brackett; that the gate was then closed; that appellants and their codefendants were seen in the vicinity of the Brackett place that evening and were seen to ride off in the direction of the Brackett pasture; that about noon of the following day Chester E. Brackett discovered that some of the herd were out of the pasture and that the heifer in question was missing; the gate was closed; he also found the tracks of horses going through the gate, and followed the tracks of the horses and the tracks of the heifer some distance from the gate; he then went to the ranch of a neighbor of the name of Clark, where he got a Mr. Mauldin and a Mr. Messenger; that the three went back to the tracks and followed them several miles to a little cabin, where they discovered that a black heifer had been butchered; that they then followed the horses' tracks until they entered the Hartwells' field. The evidence further showed that the appellants and their codefendants had returned to the Hartwell ranch some time during the night of the 21st or early in the morning of the 22d, with four quarters of young beef and there was blood on their ropes and saddles. In addition to this evidence, testimony was introduced showing that each of the appellants had confessed to the crime.

The appellants have set up forty-two separate assignments of error. It will not be necessary to discuss each of those separately. In their brief counsel have, for convenience in argument, grouped the various assignments of error under six separate heads. We will discuss them in the order in which they have been presented to us.

The first contention of appellants is: That they never had a legal preliminary hearing and that hence the district court was without jurisdiction to try their cause. The preliminary hearing was held before A. V. Mounce, a justice of the peace, sitting as a committing magistrate. It is made to appear in the record that Mounce was appointed as justice of the peace for Buhl precinct No. 2, in Twin Falls county, and that on the date of his appointment and on the date of the preliminary hearing he was a resident of Buhl precinct No. 1, and at all times held his court in precinct No. 1, and that the preliminary hearing was held therein. It is contended that since sec. 3885, Rev. Codes, provides: " . . . . every Justice of the Peace shall reside in the Precinct in which his court is held," Mounce was not a justice of the peace and had no lawful authority to hold the preliminary hearing or commit the appellants. While it may be true that, under the facts as they appear in the record, Mounce was not eligible to the office of justice of the peace for the precinct for which he was appointed and could not be regarded as an officer *de jure,* it is also true that he was appointed and commissioned as a justice of the peace, that he qualified as such, and that he habitually held court as such in his precinct. Under well-recognized rules this would constitute him an officer *de facto,* and as such his jurisdiction and his acts, within the scope of the office which he was administering, would be as valid as to the public and third parties as though he were qualified and eligible in every respect and an officer *de jure.* (*Hamlin v. Kassafer,* 15 Or. 456, 3 Am. St. 176, 15 Pac. 778; *State v. Carroll,* 38 Conn. 441–471, 9 Am. Rep. 409.) In the latter case it was said: "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve

the interests of the public and third persons, where the duties of the office were exercised. . . . . Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public. . . . . "

It is next contended that the trial court committed prejudicial error in permitting the indorsement of the name of the witness George Clark on the information on the day the case was called for trial. It does not appear, however, that appellants requested a continuance or claimed surprise, and it further appears that the matter with reference to which Clark testified occurred more than a month after the information was filed. Nor does it appear that the appellants were in any wise prejudiced in this regard. (*State v. Rooke,* 10 Ida. 388, 79 Pac. 82; *State v. Wilmbusse,* 8 Ida. 608, 70 Pac. 849; *State v. Silva,* 21 Ida. 247, 120 Pac. 835.)

Appellants seek to predicate error upon certain leading questions which were asked by the counsel for the state. While the practice of asking leading questions is not to be commended, except in the cases provided for by statute, this is a matter largely in the sound discretion of the trial court, and from an examination of the record in this case we are unable to say that the trial court abused its discretion in ruling upon the questions presented.

Appellants further contend that certain exhibits, consisting of a piece of rope and a portion of the hide of a black animal, which were found, as the evidence discloses, at or near the place where the heifer was butchered, were not sufficiently identified to be admissible in evidence and were highly prejudicial. While it may be true that the evidence does not account for the whereabouts of the exhibits during every moment of the time which elapsed between their discovery and their offer in evidence, we are convinced that the identification was sufficient to justify their admission.

Error is predicated upon the admission of the alleged confessions, and while it does not clearly appear upon just what

ground the objection to this testimony was based, it was probably the intent to raise the point that the proper foundation had not been laid for the introduction of this evidence. But in each instance, before the confessions or the testimony touching the confessions was admitted the witnesses were examined generally in regard to what, if any, threats, promises or inducements had been held out to appellants in order to induce or procure a confession, and it sufficiently appears from this evidence that the confessions were freely and voluntarily made. It should also be remembered in this regard that in addition to the testimony offered by the state in this behalf the court voluntarily offered appellants' counsel an opportunity in each instance to cross-examine fully in the presence of the jury, and the offer was in each instance refused. As to whether or not the burden rests upon the state in the first instance to establish that a confession was free and voluntary before the same may be admitted in evidence, there seems to be much conflict in the authorities. (Underhill on Crim. Evidence, 2d ed., sec. 127, and cases there cited.) We are not called upon, however, here to determine this question, as under the most extreme view we are satisfied that sufficient evidence was introduced to show that the confessions were freely and voluntarily made before they were admitted in evidence.

Error is predicated upon the refusal of the court to give appellants' requested instructions Nos. 4, 10, 24, 19, 28 and 30. No. 4 was covered by instruction No. 4 as given. Nos. 10 and 24 were covered by instructions Nos. 8 and 9 as given. No. 19 was covered by instruction No. 5 as given. No. 30, in so far as proper, was covered by instruction No. 4 as given. Requested instruction No. 28 is as follows: "You are further instructed by the court that before you can find the defendants or either of them guilty of the crime charged in the information, you must believe from the evidence adduced by the state and be convinced beyond a reasonable doubt, that the offal described by the various witnesses in this case was the offal of one Polled Angus Heifer of the property of Ira Brackett and Chester E. Brackett, taken and stolen on the

21st day of June, 1914, in the county of Twin Falls, state of Idaho, and that the hide produced in evidence in this case and marked as an exhibit is a hide off and of one Polled Angus Heifer and the personal property of Ira Brackett and Chester E. Brackett, and was such on the 21st day of June, 1914, and unless you believe from all the evidence, and beyond a reasonable doubt that the offal above referred to, and the hide above referred to, was the offal and hide of the Polled Angus Heifer described in the information in this case and of the personal property of Ira Brackett and Chester E. Brackett, then your verdict must be for the defendants and they acquitted by you.''

This instruction was properly refused. It is not necessary that every fact and circumstance in evidence be proven beyond a reasonable doubt. All that is required is that from all the facts and circumstances in evidence, when considered together, the inference of guilt must be so strong and conclusive as to exclude every reasonable doubt.

Error is predicated upon instructions Nos. 7, 8, 9, 17, 11 and 6 as given by the court. Instruction No. 7 reads as follows: ''The court instructs the jury that all persons are equally guilty who act together with a common intent in the commission of a crime, and a crime so committed by two or more persons jointly is the act of all and of each so acting.'' This instruction states in substance the law upon this point and cannot be said to be erroneous. (Secs. 6343 and 7697, Rev. Codes.)

Instructions Nos. 8 and 9, which are complained of, state the law substantially as requested by appellants in instructions Nos. 10 and 24, and for that reason appellants are not in a position to predicate error thereon.

Instruction No. 17 is attacked for the reason that it does not define circumstantial evidence. As there was no request for an instruction defining circumstantial evidence, this error is not well taken, the instruction so far as it goes correctly stating the law.

The portion of Instruction No. 11, which is complained of, reads as follows: ''No juror from mere pride of opinion

hastily formed or expressed should refuse to agree; nor, on
the other hand, should he surrender any conscientious views
founded on the evidence. The jury should, therefore, lay
aside pride of opinion and judgment, examine any differ-
ences of opinion there may be among them, in a spirit of fair-
ness and candor, reason together and talk over such differ-
ences, and harmonize them, if possible, so that this case may
be disposed of.'' While this instruction is subject to criti-
cism and has been previously criticised by this court (*State
v. Chambers*, 9 Ida. 673, 75 Pac. 274; *State v. Moon*, 20 Ida.
202, Ann. Cas. 1913A, 724, 117 Pac. 757), and should not
be given, under the circumstances under which it was here
given, it cannot be regarded as prejudicial nor sufficient to
justify a reversal. As is pointed out in *State v. Ivanhoe*, 35
Or. 150, 57 Pac. 317, cited by appellants, this instruction does
not seem to have been regarded as prejudicial when given as
a part of the general instructions to the jury, but is only to
be regarded as prejudicial when it has been given after the
jury has failed to agree, and it is then regarded as preju-
dicial upon the theory that the natural effect of the instruc-
tion under such circumstances is to coerce a verdict.

It is finally contended that Instruction No. 6 is prejudicial,
and in view of the fact that the main argument of appellants
has been directed to this instruction, we quote it in full, as
follows: ''In a legal sense, a reasonable doubt is one which
has some reason for its basis; it does not mean a doubt from
mere caprice or groundless conjecture, nor must the jury
entertain such doubts as are merely chimerical. A doubt
produced by undue sensibility in the mind of a juror in view
of the consequences of his verdict, is not a reasonable doubt,
and the jury is not allowed to create sources or materials of
doubt by remote conjectures as to possible states of the case
different from those established by the evidence. You are
not at liberty to disbelieve as jurors if, from the evidence,
you believe as men.

''Your oath imposes on you no obligation to doubt when
no doubt would exist if no oath had been administered, and

in considering this case the jury are not to go beyond the evidence to hunt up doubts.

"A doubt, to justify an acquittal, must be reasonable, and must arise from a candid and impartial consideration of all the evidence in the case, and unless it is such that were the same kind of doubt interposed in the graver transactions of life it would cause a reasonable and prudent man to hesitate and pause, it would not be sufficient to authorize a verdict of [not] guilty.

"If, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt. In other words, a reasonable doubt is such a doubt as a prudent and reasonable man would be likely to act upon in determining the important affairs of life."

This instruction was approved by this court in *State v. Lyons*, 7 Ida. 530, 64 Pac. 236, and *State v. Moon, supra.* While the instruction may properly be subjected to some criticism and many courts have condemned it, its giving has not generally been regarded, even in the jurisdictions where it has been condemned, as sufficient of itself to amount to prejudicial or reversible error. (*Bothwell v. State*, 71 Neb. 747, 99 N. W. 669; *Lillis v. State*, 72 Neb. 228, 100 N. W. 316; *Clements v. State*, 80 Neb. 313, 114 N. W. 271; *Holmes v. State*, 82 Neb. 406, 118 N. W. 99; *Blue v. State*, 36 Neb. 189, 125 N. W. 136; *Brown v. State*, 88 Neb. 411, 129 N. W. 545; *Bartels v. State*, 91 Neb. 575, 136 N. W. 717; *Lambert v. State*, 91 Neb. 520, 136 N. W. 720.) In the latter case, however, Hamer, J., wrote a strong dissenting opinion, in which he argued that the instruction should be regarded as prejudicial error. (*People v. Johnson*, 140 N. Y. 350, 35 N. E. 604; *Siberry v. State*, 133 Ind. 677, 33 N. E. 681; *Adams v. State*, 34 Fla. 185, 15 So. 905; *Thomas v. State*, 74 Ark. 431, 86 S. W. 404; *McAllister v. State*, 112 Wis. 496, 88 N. W. 212; *McQueary v. People*, 48 Colo. 214, 110 Pac. 210, 21 Ann. Cas. 560.) The Wisconsin case, cited above, attempts to draw a serious distinction between the words "graver transactions of life" and the words "important

affairs of life." We are unable to follow the reasoning of the Wisconsin court on this point. In the McQueary case, above cited, the supreme court of Colorado used this language: "In sustaining the instruction, however, we do not wish to be understood as commending it. On the contrary, we regard it as useless, because it conveys no information which men of ordinary intelligence do not already possess, and is subject to the criticism made by the supreme court of California, in *People v. Whitney,* [53 Cal. 420], wherein it was said, in speaking of a similar instruction: 'It is not to be presumed that jurors would, from the charge of the court, the arguments of counsel, or anything transpiring at the trial, entertain the idea that in becoming jurors they had ceased to be men, or had acquired any new capacity by which they might test the truth of evidence; it was therefore as unnecessary to instruct them that a juror has no right to disbelieve the evidence as a juror while he believes it as a man, as it would have been to charge them that in becoming jurors they had not lost the capacity, which they possessed as men, to distinguish truth from falsehood or mistake.'" We are inclined to the same view.

We have carefully examined the entire record and have been unable to find wherein the appellants have been prejudiced. The evidence is sufficient to sustain the verdict, and is uncontradicted. The judgment is therefore affirmed.

Morgan and Rice, JJ., concur.