348 P.2d 724

Hugh COUGHRAN, Plaintiff-Appellant,

v.

Volney W. HICKOX, Defendant-Respondent.

No. 8695.

Supreme Court of Idaho.

Jan. 20, 1960.

Rehearing Denied Feb. 9, 1960.

Frank Kibler, Nampa, Donart & Donart, Weiser, for appellant.

Elam & Burke, Boise, Alexanderson & Davis, Caldwell, for respondent.

TAYLOR, Chief Justice.

This action arose out of an intersection collision which occurred July 22, 1956. Plaintiff (appellant) was driving his automobile east on an oiled or hard-surfaced highway. Defendant (respondent) was driving his pickup truck south on a graveled highway. The two vehicles collided in an intersection where the two highways cross. Such intersection and highways are within the Golden Gate highway district

in Canyon county. Defendant was secretary of the district and as such he had recorded and signed minutes of the proceedings of the board of directors at a meeting held January 5, 1959, at which the board adopted a resolution "establishing all side roads leading into oiled roads in the dist., not state highways, as stop roads." Although the evidence is conflicting as to whether stop signs had been posted at the intersection prior to the collision, the evidence establishes that there were no stop signs posted at the intersection on the day of the collision.

Each party alleged that he entered the intersection first, and each charged the other with negligence in failing to yield the right of way. In addition, plaintiff alleged that he approached the intersection on a through highway and on defendant's right. Defendant alleged that plaintiff approached the intersection at an unsafe and dangerous rate of speed in excess of 45 miles per hour, and that plaintiff's view of the highway, on which defendant was approaching, was obstructed by vegetation growing along the highway. Plaintiff testified he was traveling about 35 miles per hour. Defendant testified that plaintiff was traveling 60 miles per hour and that he, defendant, was traveling about 25 miles per hour.

The initial contact of the vehicles was made between the left front fender of plaintiff's car and the right front fender of defendant's pickup truck. As a result, the two vehicles were thrown together, side against side. Defendant's truck was turned to the east and came to rest along the south side of the highway, upon which plaintiff had been traveling, at a point about 96 feet from the point of impact. Plaintiff's car was turned toward the southeast and came to rest against an embankment at the southeast corner of the intersection.

Defendant argues that these physical facts support his testimony that plaintiff was traveling at an excessive speed.

The jury returned its verdict for the plaintiff, but found no damages in his favor. From the judgment entered thereon, plaintiff brought this appeal.

The court instructed the jury in the language of the statute as follows:

"(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

"(b) When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

Plaintiff requested an instruction containing subparagraph (b), supra, and the following:

"You are further instructed that two vehicles are to be considered as

entering an intersection at approximately the same time when they approach so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed."

This request the court refused on the ground that it was covered by the instruction given. Plaintiff assigns the refusal as error.

In the case of Moore v. Kujath, 225 Minn. 107, 29 N.W.2d 883, 175 A.L.R. 1007, the plaintiff Moore approached the intersection, where the collision occurred, from the north. The defendant Kujath approached the intersection from the east. His defense was that he entered the intersection first; he testified he was moving at a speed between 25 and 30 miles per hour. Plaintiff testified he was driving at about 35 or 40 miles per hour. The jury found for the defendant. The Minnesota supreme court concluded from the facts that if defendant entered the intersection first it was by only one or two seconds. After quoting the intersection right of way statute, M.S.A. § 169.20, subd. 1, which is the same as our I.C. § 49-727, the court said:

"* * * As we view the two sentences, the second one so modifies the first as to require the driver on the left, even though he may reach the intersection first, to yield the right of way to the driver on the right in a situation where the two vehicles would collide were each to continue its course and maintain its rate of speed. To otherwise interpret the law and to arbitrarily give to him who first enters the intersection the right of way over another vehicle approaching at approximately the same time from the right would be to increase rather than diminish the hazards of driving. By *approximately*, the legislature must have meant the approach to an intersection of two vehicles so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed. In that case, he on the left should yield to him on the right. While the driver on the left is not required to come to a dead stop, as at a through highway stop sign, unless it is necessary to avoid a collision, he nevertheless must approach the intersection with his car so under control that he can yield the right of way to a vehicle within the danger zone on the right." 29 N.W.2d at page 886, 175 A.L.R. at pages 1010, 1011.

The Minnesota court held that the facts showed defendant was guilty of negligence as a matter of law in failing to yield the right of way.

In a later case, Bellman v. Posnick, 233 Minn. 268, 46 N.W.2d 475, the court again

followed the rule announced in Moore **v.** Kujath, supra.

In the Bellman case the court held:

> "Where plaintiff's own testimony disclosed that plaintiff drove into intersection only a split second ahead of defendant who was on the plaintiff's right, and there was no evidence that defendant was driving at an excessive speed, plaintiff would be deemed contributorily negligent as a matter of law for failing to yield a right of way, * * *." Bellman v. Posnick, 46 N.W. 2d 475, Syllabus 1.

Other authorities approving the rule set forth in Moore v. Kujath, supra, are: Vogel v. Vetting, 265 Wis. 19, 60 N.W.2d 399; Eden v. Klaas, 166 Neb. 354, 89 N.W. 2d 74; Shew v. Bailey, 37 Tenn.App. 40, 260 S.W.2d 362.

In Gernandt v. Beckwith, 160 Neb. 719, 71 N.W.2d 303, the plaintiff approached from the left, but claimed to have entered the intersection first. There was no substantial difference in the speed of the two vehicles. After referring to the right of way statute, R.R.S.1943, § 39–728, the court said:

> "* * * When a collision occurs in the ordinary city or country intersection, unless there is evidence that one of the vehicles was traveling at a very much greater rate of speed than the other, it is self-evident that the ve-hicles were reaching the intersection 'at approximately the same time.'" 71 N.W.2d at page 304.

Giving the defendant the benefit of the right of way statute under such circumstances, the Nebraska court sustained an order of the trial court dismissing the action at the close of plaintiff's evidence.

In Shamlian v. Minardi, 123 Cal.App. 495, 11 P.2d 402, the court, applying the right of way statute, West's Ann.Vehicle Code, §§ 550–552, said:

> "'* * * A vehicle may approach an intersection at "approximately the same time" as another if it approaches slightly before or slightly after the other.' Both vehicles traveling at approximately the same rate of speed and colliding near the center of the intersection, it is quite evident that both cars approached the intersection at approximately the same time, within the foregoing definition. The Ford being driven by decedent at a lawful rate of speed therefore had the right of way, and it was negligence for appellant to attempt to proceed through the intersection." 11 P.2d at page 403.

In applying the rule contended for by appellant, the Wisconsin supreme court, in Vogel v. Vetting, 265 Wis. 19, 60 N.W.2d 399, held that where both drivers were negligent in the management and control of their respective vehicles, the driver on

the left was negligent as a matter of law in failing to yield the right of way, and could not recover.

From the foregoing the rule may be adduced that, where two vehicles approach an intersection at lawful rates of speed and from such relative distances, that it must appear to a reasonably prudent person in the position of the driver on the left that if both vehicles continue their same course at the same speed, a collision is likely to occur—they approach the intersection "at approximately the same time" and the driver on the left must yield to the driver on the right.

In Fester v. George, 71 S.D. 424, 25 N.W.2d 455, the plaintiff approached the intersection on the left of the defendant, and apparently entered the intersection first. Under a statute (SDC 44.0318) the same as ours, the court on this phase of the case said:

'* * * in determining the right of way it is without legal significance which car actually entered the intersection first if it appears that the vehicles approached or entered the intersection at approximately the same time. It follows that the single fact that plaintiff entered the intersection first, did not give him a right of precedence over defendant. The controlling issue is whether the two cars were approaching or entering the intersection at ap-proximately the same time; if they were, the plaintiff being on the left, should have yielded to the defendant; if they were not, no question of right of way is presented. The parties are approaching the intersection at 'approximately the same time' whenever the two vehicles are in such a relative position that upon appraisal of all the factors in the situation it should appear to a man of ordinary prudence approaching from the left that there is danger of collision if he fails to yield the right of way." 25 N.W.2d at page 456.

However, in the Fester case there was testimony that after plaintiff had made his first observation of defendant's approach and concluded he had time to cross ahead of defendant, defendant substantially increased his speed. Concerning this the court said: "Plaintiff was not bound to anticipate such action." The court then quoted from Ward v. Clark, 232 N.Y. 195, 133 N.E. 443, as follows:

"* * * With the plaintiff's car 40 feet away, and the defendant's eighty, there appeared to be sufficient clearance. So, at least, a reasonable man might not unreasonably believe. Sudden acceleration of the defendant's speed was not to be foreseen. * * *' * * *

" 'The privilege thus conferred [by the statute] is not inflexible and abso-

lute. A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced. It helps us little when without it the balance would be unequal. A right of way might turn the scales if, when the plaintiff started to cross, the cars had been equi-distant, or nearly so, from the point of the collision, due regard being had also for the speed of their approach. Even with the distances what they were, it was an element which the triers of the facts were to consider in their estimate of conduct. * * * ' " Fester v. George, 25 N.W. 2d 455, at page 457.

The facts before us involve the element considered by the South Dakota court. That element is defendant's testimony that plaintiff approached the intersection at a speed of 60 miles per hour. I.C. § 49–701, so far as applicable, provides:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"(b) Where no special hazard exists that required lower speed for compliance with paragraph (a) of this section the speed of any vehicle not in excess of the limits specified in this section or established as hereinafter authorized shall be lawful, but any speed in excess of the limits specified in this section or established as hereinafter authorized shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:

"1. * * *

"2. Sixty miles per hour in other locations during the daytime;

* * . * * * *

"(c) The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

While there is no express provision in the present statute for forfeiture of right of way by a plaintiff who approaches an intersection at an unlawful rate of speed, such rule is implicit in the law of contributory negligence. So, if the jury found from defendant's testimony that the plaintiff approached the intersection at an unlawful or dangerous rate of speed, or

failed to drive at an appropriate reduced speed when approaching the intersection, and that such conduct was a contributing proximate cause of the collision, then the plaintiff could not recover.

"Ordinarily a motorist may assume that other travelers will obey the rules of the road, at least in the absence of anything which in the exercise of reasonable care would put him on notice to the contrary. Where he is himself observing the regulations for traffic on the highway he has a right to its use superior to that of one who is violating traffic regulations, * * *." 60 C.J.S. Motor Vehicles § 270, p. 650.

If defendant was observing traffic regulations he was entitled to assume that plaintiff was traveling at a lawful rate of speed and that he would approach the intersection at "an appropriate reduced speed." If defendant was observing traffic rules and the collision was proximately caused by failure of plaintiff to obey traffic regulations, then it follows that plaintiff would not be protected by the right of way statute.

■ Having in mind the fact that defendant's view of the intersecting highway on his right was obstructed over the course of the last 100 feet of his approach to the intersection, it was his duty to drive at such "an appropriate reduced speed," and have his car under such control, that he could slow down or stop as need be, when he reached a point where he could see a vehicle approaching from his right in such proximity as to give rise to the hazard of a collision should he proceed. I.C. § 49–701; Walkup v. Bardsley, 8 Cir., 111 F.2d 789. If plaintiff was observing traffic regulations he was entitled to assume that defendant would approach the intersection and slow down or stop in compliance with his duty as above stated.

■ If the jury found these issues of fact as to compliance or noncompliance with traffic regulations in favor of the plaintiff, then the plaintiff was entitled to have the benefit of the statute giving him the right of way. To secure that right it would in such case become a matter of importance that the jurors understand the meaning of the phrase, "at approximately the same time," so that they would accord the plaintiff the right of way even though it may have appeared to them that defendant actually reached the intersection momentarily ahead of the plaintiff. In the absence of an explanation of the phrase the jury might, in view of subdivision (a) of I.C. § 49–727, be led to believe that the law required the plaintiff to yield.

The duties of the respective drivers arising out of the facts presented by the record were covered only by general instructions on negligence and contributory negligence and by the provisions of the applicable stat-

utes. In view of the request, we think the instructions were not sufficiently explicit to enable the jury properly to apply the law to the facts, and that the cause should therefore be remanded for a new trial. This is not to say that the defect would be cured by adding the request to the instructions given. The request should be accompanied by other instructions amplifying the duty of the respective drivers under the law, as determined by the state of the facts which the jury might find from the evidence.

■ After hearing the instructions of the court and the arguments of counsel, the jury retired for deliberation at 4:20 p. m. At 11:06 p. m. the jury was returned to the court room and further instructed as follows:

"There is one more instruction I would like to give you and I would like to have you consider it along with the other instructions that have heretofore been given and then see if you can reach a verdict in this matter. You are instructed that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet the jury should examine the question submitted with candor and with a proper regard and deference to the opinions of each juror; that it is your duty to decide the case if you can conscientiously do so; that you should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number are for one side, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority are for the other side, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. I would like for you to take this instruction and add it to the ones you have and consider it. You may retire at this time."

The giving of this instruction is assigned as error. Similar instructions have been criticised by this court in criminal cases, but not considered so serious as to require reversal. State v. Moon, 20 Idaho 202, 117 P. 757; State v. Nolan, 31 Idaho 71, 169 P. 295. The giving of an instruction in such language as to interfere with the free exercise of an unbiased judgment on the part of the individual juror is prejudicially erroneous. 89 C.J.S. Trial § 481a. and c. The instruction complained of is not coercive in character, although when used it should be improved both in substance and form. See 89 C.J.S. Trial § 481b.; Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; Railway Express Agency v. Mackay, 8. Cir., 181 F.2d 257,

**28**

19 A.L.R.2d 1248; Nelson v. Atlantic Coast Line R. Co., 191 S.C. 345, 4 S.E.2d 273.

The judgment is reversed and the cause is remanded to the district court with instructions to grant a new trial.

Costs to appellant.

SMITH, KNUDSON and McQUADE, JJ., concur.

PORTER, C. J., sat at the hearing, but died before the court reached its decision.