419 P.2d 667

**Sheldon SANDERS, Plaintiff-Appellant,**

**v.**

**C. J. HAMILTON, Mrs. C. J. Hamilton and Thomas Mitchell, Defendants-Respondents.**

**No. 9813.**

Supreme Court of Idaho.

Nov. 1, 1966.

J. H. Felton, Lewiston, for appellant.

Miller & Knudson, Coeur d'Alene, for respondents.

McFADDEN, Chief Justice.

This action was instituted by plaintiff-appellant to recover damages to his car and for personal injuries he sustained as a result of a collision between his 1950 Chevrolet sedan and a Cadillac sedan driven by respondent Mitchell, and owned by respondents, Mr. and Mrs. Hamilton. The action was tried before a jury which returned a verdict for the respondents. Judgment was entered on this verdict, from which judgment this appeal was taken.

The accident occurred on March 2, 1964 at about 4:20 p. m. on U. S. Highway No. 95 a short distance easterly from Lewiston. In the vicinity of the accident U. S. Highway No. 95 consists of two westbound and two eastbound traffic lanes divided by a 24-foot strip. Generally U. S. Highway No. 95 traverses the state in a north-south direction, but on approaching Lewiston, the highway runs east and west. Parallel to and south of this divided highway there is a frontage roadway. Thirty-first Street is at right angles to and intersects this secondary roadway and extends north across both the east and west lanes of U. S. Highway No. 95, continuing on north to certain businesses. Thirty-first Street, between the eastbound and westbound lanes of U. S. Highway No. 95, is 60 feet in width; on its extension north from the main highway it is 34 feet in width. The entrance of Thirty-first Street to the eastbound lanes of U. S. Highway No. 95 is marked by a stop sign, as is the entrance of this street to the westbound lanes at the north edge of the highway. There was no stop sign on that portion of Thirty-first Street as it crosses the 24-foot divider strip between the eastbound and westbound lanes.

On the day of the accident appellant Sanders, who was engaged in installing a lawn sprinkler system in Lewiston Orchards, needed some additional parts. To get them he left his work and was enroute to a supplier of these parts, whose business was on Thirty-first Street a little north of U. S. Highway No. 95. Appellant, driving his Chevrolet sedan, was proceeding easterly on U. S. Highway No. 95; at the Thirty-first Street intersection, Sanders made a left turn to the north onto that portion of Thirty-first Street situate in the divider strip of U. S. Highway No. 95. He testified that he stopped before proceeding across the westbound lanes of traffic and let 12 to 14 westbound cars pass before a "break came," when he observed a heavy truck traveling about 35 miles an hour. This truck was in the southerly westbound lane of U. S. Highway No. 95 and about 300 feet to the east of the intersection, traveling west. He entered the highway, with his vehicle in second gear, and was proceeding north across the westbound lanes when he observed the Cadillac 100 feet from him, also traveling west. When he first observed the Cadillac, he stated, the front wheels of his vehicle had just crossed the center line of the two westbound lanes. He stated he accelerated as fast as he could and tried to turn to the left to avoid an accident, but his efforts were fruitless and the collision ensued.

Respondent Mitchell, who was the driver of the Cadillac, testified that as he and the Hamiltons approached Lewiston, he was driving the car, with Mr. Hamilton asleep in the front seat, and Mrs. Hamilton sitting in the rear seat. He testified that he observed a 50-mile per hour sign a short distance east from the point of the accident. He said he was driving the car in the northerly or right-hand lane of the two westbound lanes of traffic and was traveling about 45 miles per hour. He saw appellant's car pull out from the divider strip onto the highway; and he blew the horn, applied the brakes, and tried to turn to the right to avoid the collision, but to no avail.

The two cars collided in the northerly portion of the outside, or northern, of the two westbound lanes, the Cadillac striking the Chevrolet on its right front door. The Cadillac was swung around so that it

stopped, facing northeasterly, and the Chevrolet stopped off the highway northwest from the intersection of the west edge of Thirty-first Street on the north edge of U. S. Highway No. 95.

■ Appellant's first assignment of error is directed to the refusal of the trial court to allow him to prove the probable speed of respondents' automobile by the circumstances of the time and distance traveled. By an offer of proof, appellant sought to establish that the respondents had been in Boise, stated to be 290 miles distant from the accident, at 11:00 a. m., and that they arrived at the scene of the accident at 4:20 p. m., after having made three twenty-minute stops, making a total travel time for the distance of four hours and twenty minutes. The trial court sustained respondents' objection to this offer of proof. Appellant argues that a calculation of the number of miles covered in relation to the time of travel, is indicative of the high rate of speed of respondents' vehicle immediately prior to the accident. It is appellant's contention that the jury should have been allowed to consider this evidence in resolution of the issue as to respondents' alleged negligence.

It is our conclusion that the trial court did not err in sustaining the respondents' objection to this offer of proof. In the first place, an average speed between two points 290 miles apart would have but little, if any, probative value as to the actual speed of a vehicle at any particular point along the route. Secondly, the admissibility of evidence as to the speed of a vehicle prior to the time of an accident in which it is involved rests largely within the discretion of the trial court. 9C Blashfield, Cyclopedia of Automobile Law and Practice, § 6235, p. 399.

61 C.J.S. Motor Vehicles § 516, p. 268, states:

"While evidence of the speed of the motor vehicle at a remote time or place is not admissible, except for the limited purpose of affecting the credibility and accuracy of testimony as to speed at the time of the collision * * * or unless it is connected with other evidence showing that the same rate of speed was maintained up to the time and place of the accident, the question of remoteness is dependent on the facts of each case and rests largely in the sound discretion of the trial court."

In Morris v. Aero Mayflower Transit Co., 73 Ariz. 390, 242 P.2d 279 (1952), it was held that the speed of a truck four or five blocks away was not entitled to consideration and was incompetent to show the speed at the place of the accident unless it be further shown that the speed was maintained. In Lundgren v. Converse, 34 Cal.App. 445, 93 P.2d 819 (1939), it was held that the issue of whether the speed of a vehicle a block and a half away from the scene of the accident was admissible in evidence was within the trial court's discretion as against an objection of remoteness. See also: Reifsteck v. Miller, 369 S.W.2d 229 (Mo.1963); Euson v. Starrett, 277 F.2d 73 (C.A.7 1960); Hunter v. Horton, 80 Idaho 475, 333 P.2d 459 (1958). The trial court did not abuse its discretion in sustaining the objection to appellant's offer of proof. This ruling obviated explanation of the facts in the offer of proof.

The second assignment of error is directed to the refusal of the trial court to give appellant's requested instructions 4, 5, 8, 9 and 10. At the outset it is to be noted that there is no challenge as to the correctness of any of the instructions given by the court.

■ Requested instruction 4 quoted the provisions of subparagraphs (a) and (b) of I.C. § 49–727, pertaining to the rights of way of vehicles approaching an unmarked intersection. These subparagraphs of this section were inapplicable to the facts in this case, since subparagraph (c) of I.C. § 49–727 provides, "The right of way rules declared in paragraphs (a) and (b) are modified at through highways * * *." U. S. Highway No. 95 at the point of the accident is a through highway, which fact

was recognized by appellant. The trial court did not err in this regard.

■ Requested instruction 5 quoted the provisions of I.C. § 49–728 which sets forth the rights and duties of a driver intending to make a left turn in an intersection. This section also is inapplicable to the facts of this case since appellant was not in the process of making a left turn in an intersection. The left turn he executed was from the eastbound lane onto Thirty-first Street which intersected the main highway. No error appears in the refusal to give this instruction.

■ Requested instruction 9 was to the effect that the driver of a car who approaches an intersection at an unlawful rate of speed is negligent and that if the jury found the driver of the respondents' car approached this intersection at an unlawful or dangerous rate of speed or failed to drive at an appropriate reduced speed when approaching the intersection, that such conduct becomes negligent, and that if the jury should further find that such unlawful and dangerous rate of speed was the cause of the accident, then the jury should find for the plaintiff. This instruction, had it been given, would have been misleading as it would have allowed recovery by appellant even if the jury had found him guilty of contributory negligence. The right of the driver of a vehicle on a through highway is governed by the provisions of I.C. § 40–202, which provides:

"The traffic on such through highways shall have the right of way over the traffic on any other highway, road or street intersecting therewith; provided, that at the intersection of two through highways the Idaho board of highway directors shall determine which traffic shall have the right of way."

Thirty-first Street, on which appellant was traveling, intersected U. S. Highway No. 95, a through highway. The duty of a person entering a through highway from any other highway, road, or street intersecting such through highway (other than another through highway) is to enter such highway only when such entry can be made with safety after observing all approaching traffic that could be endangered by such entrance. The purpose of establishing through highways is to eliminate the hazards created by unmarked intersections and to allow the free and safe movement of traffic on such highways. The trial court did not err in refusing to give this requested instruction.

■ Requested instruction 10 dealt with the rule that a motorist may assume other travelers will obey the rules of the road, in the absence of anything which, in the exercise of reasonable care, would put him on notice to the contrary. This requested instruction was not given by the trial court for the reason that the subject matter was covered by instructions given. Instruction 25, given by the court, adequately covered this rule. There was no error in refusing to give requested instruction 10.

Throughout the brief and argument, appellant has cited and referred to the case of Coughran v. Hickox, 82 Idaho 18, 348 P.2d 724 (1960), as governing the rights of the respective parties upon approaching an intersection. The Coughran case, unlike the instant one, dealt with an intersection between two highways, neither of which were through highways, and neither of which were marked with "stop" signs. The facts and discussion as to the law applicable in the Coughran v. Hickox case are not applicable here where the intersection was between a street and a through highway.

The judgment is affirmed. Costs to respondents.

McQUADE, TAYLOR and SMITH, JJ., and FELTON, District Judge, concur.